UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
BARRY BROWN,

                Plaintiff,                        16 CV 1106 (NG) (RER)

        -against-

                                               **OPINION & ORDER**

THE CITY OF NEW YORK, DAVID
FRANKEL, BETH E. GOLDMAN, JACQUES
JIHA, ELOISE M. ARCHIBALD, FRANK P.
PESALE, and ALEXANDER STATIS,

                Defendants.
-------------------------------------------------------------x

**GERSHON, United States District Judge:**

## I.   Introduction

As alleged in the complaint in this action, plaintiff Barry Brown is an African American man who was formerly employed as a Deputy Sherriff by the New York City Department of Finance (the "DOF"). He brings claims for employment discrimination on the basis of race against The City of New York (the "City"); against David Frankel, a former Commissioner of the DOF, Beth E. Goldman, a former Commissioner of the DOF, and Jacques Jiha, Commissioner of the DOF (collectively, the "Commissioners"); against Eloise Archibald, Director of the Psychological Services Unit of the City's police department; and against Frank Pesale and Alexander Stratis,[1] both employed as psychologists by the City. He asserts his claims under the Civil Rights Act of 1871, 42 U.S.C. § 1983; the New York State Human Rights Law, N.Y. Exec. Law § 296 (the "NYSHRL"); and the New York City Human Rights Law, New York City, N.Y., Code § 8-107

---

[1] Defendants assert that Stratis is misidentified as "Statis" in the caption and complaint. This opinion will use defendants' spelling.

(the "NYCHRL").² Defendants move to dismiss. For the reasons stated below, that motion is granted as to the Commissioners, and denied as to all other defendants.

## II. Factual Allegations

### A. Brown's employment history and application for the position of Deputy Sherriff

Brown, an African American man, graduated from Baruch College in 1997. From June 4, 1991 to January 28, 1999 he served in the United States Marine Corps, from which he was honorably discharged.

In December of 2012, he began the hiring and testing process for the position of Deputy Sherriff with the DOF. Deputy Sheriffs are officers authorized to make warrantless arrests, issue summonses and conduct vehicle stops; to carry and to use firearms, batons, pepper spray and handcuffs; and to use physical and deadly force. The notice of examination for the position, to which Brown refers in his opposition and of which he does not dispute the contents, states that candidates must pass several screenings, including a written examination and physical and psychological exams. *See* Englander Decl. in Support of Motion to Dismiss, Ex. 1 ("Notice of Examination"), Docket No. 20. Candidates must also complete training on the use of deadly physical force and the use of firearms and other weapons. *Id.* The psychological exam for this position was not conducted by the DOF, but rather by the New York City Police Department's Psychological Services Unit, of which defendant Eloise Archibald is the Director.

Around February 19, 2013, Brown successfully completed the written and physical examinations for the position and entered the New York City Sherriff's Academy (the "Sherriff's Academy"). Brown underwent a training and evaluation process while in the Sherriff's Academy,

---

² In his opposition to defendants' motion to dismiss, Brown withdraws his previously asserted claim under the Civil Rights Act of 1866, 42 U.S.C. §1981.

which included a psychological evaluation. On February 24, 2013, Brown took the Minnesota Multiphasic Personality Inventory ("MMPI-2"), a test designed to evaluate psychological stability. On February 25, 2013, he was interviewed by defendant Frank Pesale, a psychologist supervised by Archibald. On March 22, 2013, Pesale found that Brown had issues with coping skills, stress tolerance and interpersonal skills, and that there was significant evidence that Brown was psychologically unsuited for the position of Deputy Sheriff.

After this finding, Brown continued his training in the Sherriff's Academy. On March 29, 2013, Brown completed the Basic Course for Peace Officers. On April 26, 2013 he completed the Initial Course in Firearms and Deadly Physical Force. On May 13, 2013, he was terminated.[3]

Shortly thereafter, Brown hired a consulting psychiatrist, Dr. Robert Daley. Dr. Daley evaluated Brown on three occasions in 2014. Dr. Daley concluded that nothing in Brown's history or Daley's own examinations supported the negative conclusions drawn by defendant Pesale and that, in Daley's opinion, Brown was psychologically suited for employment as a Deputy Sherriff.

Brown was re-evaluated by the City.[4] He retook the MMPI-2, and on June 9, 2015, he was interviewed by defendant Alexander Stratis, a psychologist supervised by Archibald. On August 25, 2015, Stratis concluded that there was sufficient evidence that Brown was psychologically unsuited for the position of Deputy Sherriff. This determination was followed by a "discretionary

---

[3] The phases in the hiring process for Deputy Sheriff are not set forth in detail, and it is unclear at this stage whether Brown's disqualification during the time he was at the Sherriff's Academy is best understood as a termination or a failure to hire.

[4] The circumstances surrounding this re-evaluation are unclear from the complaint. Brown alleges that he was a Deputy City Sherriff, that he was terminated, and that the defendants re-evaluated him as an equitable measure because of an administrative error in issuing a Notice of Proposed Disqualification. Defendants characterize the situation differently, stating that Brown was a "provisional Deputy City Sherriff." They assert that he was disqualified from that position because of his psychological screening results, but that he remained eligible for the *permanent* title of Deputy City Sherriff and that he was re-evaluated in connection with that position.

3

hearing" by the New York City Civil Service Commission (the "Civil Service Commission"). On November 5, 2015, Brown received a Notice of Proposed Disqualification and subsequently submitted documents to rebut the findings of his psychological evaluations. On February 19, 2016, the Civil Service Commission upheld his disqualification by a vote of two to one.

  B.  General allegations regarding psychological screening

Brown alleges in his complaint that psychological screening requiring analysis by a psychologist creates the opportunity for disparate treatment of, or disparate impact upon, candidates as a result of their race, because such testing is susceptible to implicit bias and subjectivity. Brown alleges that the City fails to administer such testing in a standardized manner, or to monitor the outcomes of such testing to determine its accuracy or impact. For example, Brown alleges that the City is not in compliance with the Uniform Guidelines on Employee Selection Procedures (the "Uniform Guidelines") adopted by the United States Equal Employment Opportunity Commission, a standardized source of guidance regarding non-discriminatory testing and selection procedures.

  C.  Brown's Sherriff's Academy class

Brown's Sherriff's Academy class consisted of 15 Deputy Sheriff candidates, of whom five were black, seven white, two Hispanic and one Asian. Brown alleges that all five of the black candidates were found to be psychologically unsuited for the position and were disqualified, whereas none of the white candidates, who had backgrounds similar to the black candidates, were disqualified. This was so even though the white candidates were subjected to psychological re-evaluation at least at the same rate as the black candidates. Brown also alleges that black candidates' psychological summaries were more likely than their white counterparts' to note "poor judgment, poor credibility and failure to take responsibility for past problematic behavior."

Brown alleges that the black candidates were at least as qualified for the position of Deputy Sheriff as the white candidates, and notes three of the five black candidates went on to become members of other law enforcement agencies.

### III. Applicable Law

#### A. Standard on a motion to dismiss

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead sufficient facts "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). The application of this standard to employment discrimination cases will be discussed below.

#### B. Statutory and Constitutional claims

Brown advances claims under 42 U.S.C. § 1983 and under the NYSHRL and NYCHRL. Section 1983 is the mechanism by which a plaintiff brings a claim against a state actor for employment discrimination on the basis of race, in violation the Equal Protection Clause of the Fourteenth Amendment. The NYSHRL and NYCHRL similarly prohibit employment discrimination on the basis of race. *See Feingold v. N.Y.*, 366 F.3d 138, 157-59 (2d Cir. 2004).

Brown's federal Equal Protection claim must proceed under a theory of "disparate treatment," which requires intentional discrimination by defendants. *See Reynolds v. Barrett*, 685 F.3d 193, 201-2 (2d Cir. 2012) (citing *City of Cuyahoga Falls v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194, (2003)).

In contrast, Brown's claims under the NYSHRL and the NYCHRL may proceed under either a disparate treatment theory or a "disparate impact" theory. A plaintiff alleging disparate impact must establish that defendants adopted a facially neutral policy that had a disparate effect on a protected group; he need not establish defendants' discriminatory intent. *See Watson v. Fort*

*Worth Bank & Trust*, 487 U.S. 977, 986-88 (1988) (discussing disparate impact under Title VII); *see also Gordon v. City of N.Y.*, 2016 WL 4618969, at *4-7 (S.D.N.Y. Sept. 2, 2016) (applying *Watson* Title VII analysis to NYSHRL and NYCHRL claims).

Brown's disparate treatment claim under § 1983 and disparate treatment and disparate impact claims under the NYSHRL are analyzed as they would be under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq. See e.g. Teasdale v. N.Y. City Fire Dep't, FDNY*, 574 F. App'x 50, 52 (2d Cir. 2014); *Motta v. Glob. Contract Servs. Inc.*, 2016 WL 2642229, at *2 (S.D.N.Y. May 4, 2016), *aff'd sub nom. Motta v. Glob. Contact Servs., Inc.*, 2017 WL 507005 (2d Cir. Feb. 7, 2017). Brown's claims under the NYCHRL are analyzed under a more lenient standard. *See Teasdale*, 574 F. App'x at 52. However, because he successfully pleads claims under § 1983 and the NYSHRL, his NYCHRL claims necessarily survive and need not be analyzed independently at this point.

## IV. <u>Discussion of Brown's Employment Discrimination Claims</u>

### A. <u>Brown has adequately pled disparate treatment</u>

In *Swierkiewicz v. Sorema*, the Supreme Court clarified that a plaintiff bringing an employment discrimination claim under a theory of disparate treatment need not, at the pleading stage, make out a *prima facie* case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 509 n.2, 510-11 (2002). The Second Circuit, construing the holding of *Swierkiewicz* in light of the plausibility standard of pleading later articulated in *Iqbal* and *Twombley* has determined that a plaintiff alleging employment discrimination on the basis of race must adequately plead that (1) his employer took adverse action against him and (2) his race was a motivating factor in the decision to take the adverse action. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85-86 (2d Cir. 2015). A plaintiff

sufficiently pleads this second requirement when he alleges facts lending "plausible support to a minimal inference of discriminatory motivation." *Id.* at 86-87 (citing *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015)).

It is not in dispute at this stage that Brown suffered an adverse employment action. Defendants argue, however, that Brown has not adequately established that any discriminatory motivation lay behind defendants' employment decisions because Brown was not qualified for the position of Deputy Sherriff and has alleged no facts suggesting discriminatory animus in the decision to terminate him.

### 1. *Brown's qualifications*

Defendants argue that, because Brown failed his psychological screening, he was of necessity not qualified for the position of Deputy Sherriff. Defendants' chain of reasoning forecloses the possibility that an exam or other requirement could be challenged as a mechanism for illegal discrimination. That is incorrect. Where the "heart of plaintiff's case is her charge that the evaluation scheme was itself biased," the allegedly biased elements of that scheme "should not be used as a way to disprove her qualification for the job." *Hurd v. JCB Int'l Credit Card Co.*, 923 F. Supp. 492, 501 (S.D.N.Y. 1996); *see also McInnis v. Town of Weston*, 375 F. Supp. 2d 70, 81-82 (D. Conn. 2005).

Brown's allegations plausibly support the conclusion that he was qualified for the position of Deputy Sherriff as described in the complaint and in the Notice of Examination for that position. He met the educational requirements specified. He served in the Marines and was honorably discharged in 1999. He successfully completed the written examination, the physical examination and the physical fitness test required for the position, and entered the Sherriff's Academy, completing required training there. Furthermore, he obtained an independent psychological

7

evaluation which found him suited for the position. *See Dawson v. N.Y. City Transit Auth.*, 624 F. App'x 763, 770-71 (2d Cir. 2015) (independent evaluation supported finding that worker was qualified).

### 2. *Facts Supporting an inference of discrimination*

The next disputed issue is whether Brown has adequately pled facts to support a "minimal inference" of discriminatory intent by any defendants. To support an inference of discrimination, Brown alleges that psychological screening requiring analysis by a psychologist is particularly susceptible to contamination with implicit bias and that defendants' psychological screenings are not administered, monitored or reviewed to prevent such contamination. He then points to the outcomes of psychological screening for himself and his Sherriff's Academy class. Specifically, he alleges that all five of the black candidates were disqualified during psychological screening, while none of the seven white candidates were, despite having similar backgrounds and similar re-evaluation rates. He alleges black candidates disproportionately received specific negative findings during their screenings regarding judgment, credibility, and ability to take responsibility for past actions.

#### i. *Sufficiency of statistical evidence*

Defendants characterize Brown's evidence as purely statistical and argue that reliance on statistics alone cannot raise a minimal inference of discrimination at the pleading stage. Defendants quote *Burgis v. N.Y. City Dep't of Sanitation* for the statement that "statistics alone are not sufficient to allege discriminatory intent in [] Equal Protection cases brought by an individual only on her own behalf, or in cases brought against a state official in her individual capacity." *Burgis v. N.Y. City Dep't of Sanitation*, 798 F.3d 63, 70 n.5 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 1202 (2016). *Burgis* does not stand for so broad a proposition—the quoted language comes from

8

a footnote characterizing prior holdings in cases decided well past the pleading phase. In *Burgis*, the Court of Appeals, in a class action pattern-or-practice case, held that, in certain circumstances, "statistics alone may be sufficient" to demonstrate discriminatory intent on a motion to dismiss. *Id.* at 69. The Court in *Burgis* went on to reject the particular statistics presented by the plaintiffs for lack of sufficient context and other technical deficiencies not applicable here. *Id.* at 70; *see also Alfaro-Flecha v. ORC Int'l, Inc.*, 2016 WL 67722, at *5 (S.D.N.Y. Jan. 5, 2016).

Unlike the statistics at issue in *Burgis*, the statistics alleged by Brown lack no needed context; they suggest that an unambiguous difference in outcomes for black and white Deputy Sherriff candidates emerged at a single, discrete point in the selection process. Discovery may yield facts that neutralize this discrepancy, but at this phase Brown's statistics lend "plausible support to a minimal inference of discriminatory motivation." *Vega*, 801 F.3d at 84.[5]

### ii. Additional evidence

While, in my view, the statistical evidence alleged here, on its own, creates at least a minimal inference of discriminatory animus, Brown presents other evidence that further supports such a finding. Brown's allegation that defendants' psychological screening process was subjective and prone to bias is plausible, in part because these screenings involve individual interviews and purport to measure indeterminate characteristics such as stress tolerance and coping skills. Brown also alleges that the City does not monitor testing and selection procedures to insure

---

[5] Defendants characterize Brown's reliance on statistics as an attempt to make a "pattern-or-practice" case out of an individual disparate treatment case. They cite *Reynolds v. Barrett* for its finding that "import[ing] the pattern-or-practice framework into the Equal Protection context would substantially circumvent the plaintiffs' obligation to raise a prima facie inference of individual discriminatory intent." *Reynolds*, 685 F.3d at 204. *Reynolds* considered the issue of whether plaintiffs in a class action could use a specific burden-shifting evidentiary framework to establish liability of individual state officials on a motion for summary judgment after lengthy discovery, not what might support a "minimal inference" of discriminatory intent in a case brought by an individual at the pleading phase. *See id.* at 198-205.

that they do not import bias into the hiring process. He alleges, for example, that the City does not comply with the Uniform Guidelines specifically promulgated by the federal government in order to combat bias in screening procedures. Finally, Brown alleges that his consulting psychologist made findings contradicting defendants', and alleges that other disqualified black candidates obtained law enforcement jobs in other capacities. Considered alongside Brown's statistical evidence, these allegations plausibly support a minimal inference that Brown was winnowed from the pool of candidates as the result of racial bias as manifested in biased administration of the psychological screening procedure.

B.     Brown has adequately pled disparate impact

A plaintiff states a claim for employment discrimination through disparate impact where he provides facts that plausibly indicate defendants adopted a facially neutral policy that had a disproportionate effect on his protected group. *See Iqbal*, 556 U.S. at 678; *Watson*, 487 U.S. at 986-88; *see also Gordon*, 2016 WL 4618969, at *4; *Jenkins v. N.Y. City Transit Auth.*, 646 F. Supp. 2d 464, 469 (S.D.N.Y. 2009).

1.     *Facially neutral policy*

Defendants suggest that, because Brown has alleged a disparate treatment claim relying on intentional conduct, his claim can be only for disparate treatment and cannot support a disparate impact theory. But there is nothing inherently inconsistent in advancing both disparate treatment and disparate impact theories based on the same facts, as these theories are simply "alternative doctrinal premises for a statutory violation." *Gordon*, 2016 WL 4618969, at *5 (quoting *Maresco v. Evans Chemetics Division of W.R. Grace & Co.*, 964 F.2d 106, 115 (2d Cir. 1992)). Of course, the allegations pled must be sufficient to support both theories, and, as the court in *Maresco* noted, a disparate impact claim may not proceed where the premises supporting it coalesce with the premises supporting a disparate treatment claim, as such a use of disparate impact doctrine would

10

"simply provide a means to circumvent the subjective intent requirement in any disparate treatment case." *Maresco*, 964 F.2d at 115; *see Gordon* 2016 WL 4618969, at *5. In contrast, in the present case, Brown has pled facts that support distinct disparate impact and disparate treatment theories.[6]

Defendants also argue that, because Brown has pled that psychological screening is fraught with subjectivity and implicit bias, he has not identified a "facially neutral" policy. This argument, that subjectivity in the screening process precludes a disparate impact claim, ignores a fundamental principle articulated by the Supreme Court almost three decades ago in *Watson v. Fort Worth Bank and Trust*. *Watson* held that "disparate impact analysis is in principle no less applicable to subjective employment criteria than to objective or standardized tests." *Watson*, 487 U.S. at 990. The requirement that an employment practice be "facially neutral" does not mean it must be objective; "subjective or discretionary employment practices" that are "facially neutral [and] adopted without discriminatory intent [] may have effects that are indistinguishable from intentionally discriminatory practices." *Id.* at 990-91. Thus, while "leaving promotion decisions to the unchecked discretion of lower level supervisors" is a facially neutral policy that "should itself raise no inference of discriminatory conduct," if an employer's "undisciplined system of

---

[6] Defendants cite *Cruz v. Coach Stores* for the proposition that Brown's allegations of subjective and implicitly biased testing "sound in intentional discrimination and cannot be shoe-horned into the disparate impact framework." Memorandum In Support of Defendants' Motion to Dismiss at 7, Docket No. 19. In *Cruz*, the Second Circuit apparently concluded that discriminatory enforcement of a no-assault policy could support only a disparate treatment claim. *Cruz v. Coach Stores*, 202 F.3d 560 at 572-73 (2d Cir. 2000), *superseded by statute on other grounds by* New York City Local Civil Rights Restoration Act of 2005, N.Y.C. Admin. Code § 8-130. Here, in contrast, the alleged policy is a broad grant of significant discretion to evaluating psychologists, which is precisely the sort of policy that can support a disparate impact claim under the well-established holding of *Watson*. *See Watson*, 487 U.S. at 982, 990-91; *Adams v. City of Indianapolis*, 742 F.3d 720, 730-32 (7th Cir. 2014), *cert. denied* 135 S. Ct. 286 (2014); *Gordon*, 2016 WL 4618969, at *5-7 (applying *Watson* to NYCHRL and NYSHRL).

subjective decision-making has precisely the same effects as a system pervaded by impermissible intentional discrimination," the employer is liable for the disparate impact of that system. *Id.*

The facts in *Watson* are instructive and support Brown's position. *Watson* applied disparate impact analysis to a facially neutral policy under which a bank delegated promotion decisions to lower level supervisors who were directly acquainted with the candidates and the nature of the jobs to be filled. *Id.* at 982. These supervisors were allowed to exercise significant discretion in making promotion decisions; the claim was that bias, subconscious or otherwise, invaded their decision-making. *Id.* at 982, 990-91. Thus, the bank's delegation of promotion authority, while facially neutral, permitted the "subconscious stereotypes and prejudices" that lead to conduct prohibited by Title VII to flourish and had the same effect on workers that the bank's adoption of an intentionally discriminatory policy would have had. *Id.* at 990-91.

Here, as defendants themselves describe it, psychologists conducted "intensely fact-specific" reviews of Brown's background, which were dispositive of his eligibility for a Deputy Sherriff position. As alleged by Brown, delegation of such heavily weighted "fact-specific" decision-making to examiners without appropriate monitoring or guidance permitted exactly the sort of "unchecked discretion" *Watson* acknowledges as a potential source of illegal disparate impact.

    2.    *Disparate Effect*

A plaintiff can demonstrate a disparate effect on his group by showing a gross statistical disparity in outcomes, or a statistically significant adverse effect coupled with other evidence of discrimination. *See Duncan v. N.Y. City Transit Auth.*, 127 F. Supp. 2d 354, 360 (E.D.N.Y. 2001), *on reconsideration*, 2001 WL 1286786 (E.D.N.Y. Oct. 19, 2001), *aff'd*, 45 F. App'x 14 (2d Cir. 2002).

As discussed above, Brown has pled that the administration of psychological screening has an outsize effect on black candidates, and in particular that it had a dramatically outsize effect on his own Sherriff's Academy class. Defendants argue that Brown's statistics are based on too small a sample size to support a meaningful inference regarding any policy's discriminatory effect.

There is no reason to disregard Brown's statistics at this stage. Brown's sample captured the entirety of a relevant pool—his own Sherriff's Academy class. The disparity in outcomes between black and white candidates was stark, and these outcomes were determined at a specific, dispositive phase in the selection procedure. It may be that, at a later stage in this litigation, defendants will be able to minimize the validity or relevance of Brown's statistics. However, statistics that may ultimately prove insufficient can nevertheless support a plausible inference of disparate impact on a motion to dismiss. *Cf. Adkins v. Morgan Stanley*, 2013 WL 3835198, at *10 (S.D.N.Y. July 25, 2013) (citing *Jenkins*, 646 F. Supp. 2d at 469) (discussing sufficiency of statistics to demonstrate discrimination in violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*).

C. Brown has adequately pled a *Monell* claim against the City

The City argues in footnotes that Brown's *Monell* claim fails because he alleges facts concerning only his own disqualification, and "proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985) (discussing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)).

Brown alleges facts supporting the causation required by *Tuttle*. Brown alleges that Archibald, the Director of the Psychological Services Unit of the City's police department,

13

supervises the entire staff of that unit, and in particular is responsible for candidate evaluation. He further alleges that the City knew or should have known of the need to adequately train and supervise employees involved in the selection process for the position of Deputy Sherriff so as to ensure that selection process was conducted in a non-discriminatory manner. Such deliberate indifference may constitute a municipal policy under *Monell*. *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 122-23 (2d Cir. 1991) (citing *City of Canton v. Harris*, 489 U.S. 378, 388–92 (1989)). Examined as a whole, the facts Brown alleges plausibly suggest a municipal policy existed under a deliberate indifference theory and that this municipal policy caused the specific alleged violation of Brown's rights.

  D. <u>Brown has failed to plead a claim against the Commissioners of the DOF</u>

As defendants note, Brown pleads very little to support his allegations against the Commissioners. An individual is not liable for damages under the NYCHRL, the NYSHRL or § 1983 merely because of a position of authority; he or she must be personally involved in the alleged deprivation. *See Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004); *Rozenfeld v. Dep't of Design & Const. of City of N.Y.*, 875 F. Supp. 2d 189, 202 (E.D.N.Y. 2012), *aff'd*, 522 F. App'x 46 (2d Cir. 2013). Personal involvement may be shown where: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference by failing to act on information indicating that unconstitutional acts were occurring." *Back*, 365 F.3d at 127 (internal quotations omitted).

The bare allegation that, as agency heads, each of these defendants "was legally obligated to ensure the aforementioned procedural safeguards in the hiring and selection process," does not plausibly establish awareness or personal involvement of the Commissioners under any of these theories. Any claims against the Commissioners are therefore dismissed.

## V. Conclusion

For the foregoing reasons, defendants' motion to dismiss the complaint is GRANTED as to defendants Frankel, Goldman, and Jiha, and DENIED as to all other defendants.

SO ORDERED.

/s/ Nina Gershon
NINA GERSHON
United States District Judge

Dated: March 23, 2017
Brooklyn, New York